UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x

ALICIA DIAZ-MELO,

                    Plaintiff,

              - against -

LONG ISLAND RAIL ROAD COMPANY;

                    Defendant.

-------------------------------------------------------------------x

**COMPLAINT**

**JURY TRIAL DEMANDED**

        Plaintiff, Alicia Diaz-Melo, by her attorneys, Liddle & Robinson, L.L.P., for her Complaint alleges as follows:

## THE PARTIES

        1.     Plaintiff Alicia Diaz-Melo ("Plaintiff" or "Ms. Alicia Diaz-Melo") has been employed by Defendant Long Island Rail Road Company ("LIRR"), a public railroad, since 1987. Plaintiff currently resides in Suffolk County, New York.  Ms. Diaz-Melo is 49 year-old Hispanic female.

        2.     The LIRR is a public benefit corporation with its executive office located at Jamaica Station in Jamaica. New York 11435.

## THE NATURE OF THE ACTION

        3.     This is a civil action for damages and remedies for discrimination against Ms. Alicia Diaz-Melo on the basis of her: (a) race in violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981; (b) age in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621, et seq.; (c) race and gender in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), et seq.; (d) age, race and gender in violation of the New York State Human Rights Law,

N.Y. Exec L § 290, et seq.; and (e) age, race and gender in violation of the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101, et seq.

4.      Specifically, LIRR denied Ms. Diaz-Melo promotions on the basis of her race, gender and age in favor of employees who were less qualified, younger, white and male.  LIRR utilized job requirements to justify refusing to hire minority applicants, including Ms. Diaz-Melo, while simultaneously waiving those requirements for younger, white and male applicants.

5.      LIRR finally promoted Ms. Diaz-Melo, effective September 28, 2016, 14 days after Ms. Diaz-Melo received a notice of dismissal and right to sue from the Equal Employment Opportunity Commission.

6.      What is set forth herein describes discrimination against the Plaintiff, which is based, in part, on a pervasive systematic pattern and practice of discrimination in promotion and advancement by LIRR in favor of younger, white and males employees and against racial minorities, females and older employees.

## JURISDICTION

7.      This court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1343(4), and the principles of supplemental jurisdiction under 28 U.S.C. § 1367.

8.      Ms. Diaz-Melo timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission on May 12, 2016.  The EEOC mailed Ms. Diaz-Melo a Notice of Dismissal and Right to Sue on September 14, 2016, which is attached as Ex. A.

## VENUE

9.      Venue is proper in this district under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claim occurred in this judicial district and Defendant is a resident of this judicial district.  Venue is also proper in any judicial district in New York State because it

is the "State in which the unlawful employment practice is alleged to have been committed" pursuant to 42 U.S.C. §2000e-5(f)(3).

## FACTS

10.    Ms. Diaz-Melo is a 49 year-old Hispanic Female born in 1967.

11.    Ms. Diaz-Melo has worked for LIRR since 1987.

12.    Ms. Diaz-Melo began her career with LIRR as a steno-typist.

13.    Ms. Diaz-Melo was promoted to Chief Operations Division, Support Clerk in 1996. Ms. Diaz-Melo remained in this position until LIRR finally promoted her to Branch Line Manager effective September 28, 2016.  During this time period, as set forth more fully below, the discriminatory conduct occurred.  Its vestiges continue today with regard to her salary and other benefits.

14.    Ms. Diaz-Melo's responsibilities throughout her tenure as Chief Operations Division, Support Clerk included, among other things:

     a.   managing and overseeing daily administrative responsibilities;

     b.   managing and overseeing certain contracts;

     c.   managing vacation schedules and weekend duty coverage for Long Island foremen overseeing approximately 65 station maintainers;

     d.   coordinating the alarm schedules for 124 stations during bussing/track programs; and

     e.   creating and implementing the Station Appearance Maintainers Orientation/Training for new maintainers.

15.    Ms. Diaz-Melo excelled at her job as Chief Operations Division, Support Clerk and performed her responsibilities more than satisfactorily.

**The LIRR's Promotion System**

16.     LIRR publicly posts job openings so that prospective employees may apply.

17.     In order to be promoted, LIRR employees are required to apply for posted job openings.

18.     Each LIRR position may have certain minimum qualifications for a candidate to be eligible for the position.

19.     LIRR's Human Resources Department ("HR") is responsible for determining whether an applicant is eligible to be interviewed or hired.

20.     LIRR job openings may require that an applicant has performed certain responsibilities and/or meet certain educational requirements, such as possessing a college degree.

21.     HR may grant waivers to the posted requirements for a particular job opening to individual applicants.

22.     If HR waives an educational requirement (an "Education Waiver") so that a job applicant may be interviewed, and considered for promotion, such waiver is supposed to be "conditional", that is, the applicant must obtain the required educational degree within a reasonable period of time, thereafter.

**LIRR Denies Ms. Diaz-Melo Promotions**
**Based On Her Age, Race And Gender**

23.     In 2007, Ms. Diaz-Melo applied for a position as an Assistant Terminal Manager (the "2007 Manager Position").

24.     Ms. Diaz-Melo was the most qualified applicant for 2007 Manager Position.

25.     HR informed Ms. Diaz-Melo that she would not be interviewed for 2007 Manager Position because she did not possess a college degree.

26.   The 2007 Manager Position was awarded to Theresa Dorsey, a white employee without a college degree.

27.   Upon information and belief, Ms. Dorsey received an Education Waiver.

28.   Ms. Diaz-Melo went to school part time over the next 8 years to receive a college degree so that she would be eligible for a promotion to either the position of Assistant Terminal Manager or Branch Line Manager.

29.   Branch Line Manager and Assistant Terminal Manager are essentially identical positions in terms of responsibilities and compensation.

30.   The distinction, as to job responsibilities, between Branch Line Manager and Assistant Terminal Manager is one of mere location.  A Branch Line Manager is located in a station in either Nassau or Suffolk County while an Assistant Terminal Manager is located in a station in New York City.

31.   In August 2014, Ms. Diaz-Melo received her college degree.

32.   In August 2015, Ms. Diaz-Melo again applied for a position as an Assistant Terminal Manager within the Stations Department, LIRR Job ID 83782.

33.   By August 2015, LIRR had never promoted a Hispanic female to either Assistant Terminal Manager or Branch Line Manager.

34.   Applicants for LIRR Job ID 83782 were eligible for one of two vacancies.

35.   Ms. Diaz-Melo was the most qualified applicant for LIRR Job ID 83782 based upon her performance, tenure with the LIRR, and experience.

36.   Ms. Diaz-Melo's immediate manager in August of 2015 was Chris Long, at that time an Assistant General Manager.

5

37.     Mr. Long advised Ms. Diaz-Melo that she was certain to be interviewed for LIRR Job ID 83782.

38.     In August 2015, James Compton, at that time Chief Stations Officer and more senior than Mr. Long, reviewed Ms. Diaz-Melo's qualifications with her before she applied.  Mr. Compton advised Ms. Diaz-Melo that she was qualified for the position.

39.     Mr. Long promised to advise Ms. Diaz-Melo whether she was selected for an interview as soon as he learned of HR's decision.

40.     Ms. Diaz-Melo was denied an interview in connection with LIRR Job ID 83782.

41.     Ms. Diaz-Melo learned that she would not be interviewed for the position of Assistant Terminal Manager by contacting Mr. Compton.  Mr. Compton advised Ms. Diaz-Melo that Mr. Long should have notified her she would not receive an interview.  Mr. Compton further blamed HR for the decision not to interview Ms. Diaz-Melo.

42.     Ms. Diaz-Melo was advised that she did not receive an interview because her current position did not include managerial or supervisory responsibilities.

43.     The position of Chief Operations Division, Support Clerk, in fact had included both managerial and supervisory responsibilities.

44.     The job description for Chief Operations Division, Support Clerk, did not identify either managerial or supervisory responsibilities as part of the position's responsibilities.

45.     For over a decade Ms. Diaz-Melo's managers, including Mr. Long, sought to revise Ms. Diaz-Melo's job description to reflect her actual responsibilities more accurately.

46.     Ms. Diaz-Melo confronted Mr. Long after learning that she would not be selected for an interview from Mr. Compton.

47.     Mr. Long apologized for not telling her himself, indicating that he was embarrassed by the decision not to interview her, but that it was beyond his control.  Mr. Long blamed HR for the decision not to interview Ms. Diaz-Melo.

48.     Mr. Long later e-mailed Ms. Diaz-Melo to apologize again and to reaffirm that he disagreed with HR's decision.  Mr. Long promised to continue working to revise Ms. Diaz-Melo's job description and to push for her promotion in the future.  Among other things, he stated:

> …I never thought it would turn out the way it did. . . .I truly did do all I could to get you an interview, my conscience is clear, I sent emails, wrote up a paper for HR to prove you supervised. . . .

49.     Two white males who were approximately 40 years old at that time, Ron Kessler and John Persico, received promotions to Assistant Terminal Manager pursuant to LIRR Job ID 83782.

50.     Neither Mr. Kessler nor Mr. Persico possessed a college degree, although that was a requirement for the Assistant Terminal Manager position.

51.     Upon information and belief, HR provided Education Waivers to both Mr. Kessler and Mr. Persico.

52.     Both Mr. Kessler and Mr. Persico have less experience than Ms. Diaz-Melo.

53.     Ms. Diaz-Melo had worked within the Stations Department for nearly two decades at the time Mr. Persico, who had no Stations Department experience, was selected for promotion to Assistant Terminal Manager, which is within the Stations Department.

54.     Notwithstanding the efforts of Ms. Diaz-Melo's direct superiors, LIRR did not revise Ms. Diaz-Melo's job description to accurately reflect her responsibilities while she was employed as the Chief Operations Division, Support Clerk.

55.     If Ms. Diaz-Melo had received one of these promotions, she would have received a raise from $75,000 per year to $94,000.

56.     The salary of the Assistant Terminal Manager is reviewed annually for increases up to an eventual maximum salary of $101,000.

**LIRR Utilizes Education Waivers To Promote
Younger, White And Male Employees**

57.     LIRR systematically utilizes eligibility requirements, and associated waivers, to favor younger, white and male applicants for promotions by routinely granting Education Waivers to younger, white and male employees for positions that require college degrees.

58.     On multiple occasions, younger, white and male employees received Education Waivers so that they could be promoted over more qualified employees in their late 40's, racial minorities and women, who were not granted Education Waivers.

59.     Younger, white and male employees who received promotions after receiving an Education Waiver often failed to pursue the degree required for their position, yet some of them received further promotions, Education Waivers, raises, and other advancement, without sanction for failing to fulfill their education requirements.

60.     The LIRR did not take any corrective or punitive action against younger, white and male employees who failed to pursue required degrees after being promoted with an Education Waiver.

61.     On several occasions, younger, white and male employees received Education Waivers for successive promotions.

62.     Casey Arasa, Matthew Baudier, John Kelly, Ron Kessler and Chris Long are each white males who received a promotion or promotions to positions that required college degrees which they did not possess.

63.     Upon information and belief, Messrs. Arasa, Baudier, Kelly, Kessler and Long each received Education Waivers in connection with their promotion to positions that required college degrees.

64.     Upon information and belief, Messrs. Arasa, Baudier, Kelly, Kessler and Long were each required to pursue and receive a college degree within a reasonable period of time.

65.     Upon information and belief, Messrs. Arasa, Baudier, Kelly, Kessler and Long have not received their college degrees and are not pursuing their college degrees.

66.     Messrs. Baudier, Kelly, and Long were each promoted twice to positions that required college degrees.

67.     Upon information and belief, HR provided Messrs. Baudier, Kelly and Long each with a second Education Waiver despite their failure to pursue or receive a college degree after receiving their first Education Waivers.

68.     Mr. Arasa was promoted three times to positions that required college degrees.

69.     Upon information and belief, HR provided Mr. Arasa with a second and third Education Waiver despite his failure to pursue or receive a college degree after receiving his first and second Education Waivers.

70.     HR systematically favored younger, white and male employees, over more qualified employees nearing LIRR's retirement age of 50, racial minorities, including Hispanics, and females when deciding which employees should receive Education Waivers. HR thus utilized Education Waivers to systematically promote less qualified younger, white and male employees over more qualified applicants who were approaching the age of 50, a racial minority or female.

71.     The LIRR also systematically failed to update position descriptions to reflect its employee's actual responsibilities. HR utilized LIRR's inaccurate job descriptions to contend

9

disfavored job applicants, such as employees in their late 40's, racial minorities and females, lacked required experience that they in fact possessed.

### LIRR Discriminates Against Employees In Their Late 40's

72.     LIRR employees become eligible for retirement benefits at age 50, provided that they have worked for LIRR for at least twenty years.

73.     A LIRR employee's retirement benefits are calculated based upon their highest earning year.

74.     LIRR therefore discriminates against employees in their late 40's and older in favor of promoting less qualified younger employees to reduce retirement benefit costs. The LIRR further discriminates against employees in their late 40's and older to avoid the risk of having to fill the same position shortly after hiring an older applicant because the applicant retires.

75.     LIRR instead encourages employees at, or approaching, the age of 50 to retire rather than pursue additional promotion opportunities. In fact, LIRR will refuse to even interview qualified employees approaching the age of 50 to ensure that they will not be able to receive a promotion—only permitting unqualified older applicants to interview to ensure that they will not be selected for the position.

### LIRR Acknowledged Ms. Diaz-Melo's Qualifications
### After Ms. Diaz-Melo Filed A Charge With The EEOC

76.     In May 2016, Ms. Diaz-Melo complained to the LIRR's Equal Employment Opportunity department concerning the foregoing discriminatory conduct.

77.     In May 2016, Ms. Diaz-Melo filed a charge of discrimination with the Equal Employment Opportunity Commission.

78.     Shortly after filing the foregoing complaints, Ms. Diaz-Melo applied for a position as a Branch Line Manager.

79.     Ms. Diaz-Melo was selected to interview for the position of Branch Line Manager in the summer of 2016.

80.     All managers received a 1% raise during the summer of 2016.  Ms. Diaz-Melo would have received this raise if she received one of the positions of Assistant Terminal Manager available pursuant to LIRR Job ID 83782 in 2015.

81.     Ms. Diaz-Melo's notice of dismissal and right to sue was mailed on September 14, 2016.

82.     Ms. Diaz-Melo was promoted to Branch Line Manager effective September 28, 2016.

83.     Ms. Diaz-Melo's responsibilities did not change between September 2015 and September 2016.

84.     Ms. Diaz-Melo was the first Hispanic female promoted to either the position of Branch Line Manager or Assistant Terminal Manager.

85.     HR's stated reason for failing to interview Ms. Diaz-Melo for the vacancies available through LIRR Job ID 83782 is thus plainly false and a pretext for discrimination—Ms. Diaz-Melo had been performing managerial and supervisory responsibilities for over a decade.

86.     LIRR's delay in promoting Ms. Diaz-Melo delayed her receipt of a salary increase, prevented her from receiving a 1% increase that each other manager received in the summer of 2016, will delay the review and increase of her salary in the future up to the maximum compensation available for a Branch Line Manager, and will delay future promotions as she will be a year behind in acquiring experience that will qualify her for more senior, and higher compensated, positions.

## FIRST CAUSE OF ACTION
### (Race Discrimination in Violation of 42 U.S.C. § 1981)

87.     Each of the foregoing allegations is incorporated herein by reference.

88.     LIRR engaged in a pattern and practice of discrimination by utilizing job requirements, and associated waivers granted by HR, to systematically deny interviews and promotions to qualified racial minorities, including Hispanics.

89.     Ms. Diaz-Melo was the most qualified applicant for each of the positions of Branch Line Manager and Assistant Terminal Manager to which she applied.

90.     Ms. Diaz-Melo was not promoted until September 28, 2016, however, because of her race.

91.     By its actions detailed above, Defendant discriminated against Plaintiff on the basis of her race in failing to promote Plaintiff in favor of less qualified white employees thereby denying her the associated raise in violation of 42 U.S.C. § 1981.

92.     Defendant's discriminatory conduct was taken with malice and/or reckless indifference to Plaintiff's rights, entitling Plaintiff to punitive damages.

93.     As a result of Defendant's discriminatory conduct, Plaintiff has suffered substantial damages, including, but not limited to, lost wages and benefits, emotional pain, and mental anguish, in an amount to be determined at trial.

## SECOND CAUSE OF ACTION
### (Race Discrimination in Violation of Title VII)

94.     Each of the foregoing allegations is incorporated herein by reference.

95.     At all relevant times, Ms. Diaz-Melo was a member of a protected class because she is Hispanic.

96.     LIRR engaged in a pattern and practice of discrimination by utilizing job requirements, and associated waivers granted by HR, to systematically deny interviews and promotions to qualified racial minorities, including Hispanics.

97.     Ms. Diaz-Melo was the most qualified applicant for each of the positions of Branch Line Manager and Assistant Terminal Manager to which she applied.

98.     Ms. Diaz-Melo suffered adverse employment actions, including being denied the foregoing promotions and associated increases in pay.

99.     The adverse employment action Ms. Diaz-Melo suffered arose under circumstances giving rise to an inference of discrimination under Title VII.

100.    Defendant's conduct in discriminating against Plaintiff was done with malice and with reckless indifference to her rights pursuant to 42 U.S.C. § 1981a.

101.    As a result of the discrimination described above, Defendant is liable to Ms. Diaz-Melo for back pay, front pay, lost benefits, mental and emotional harm, punitive damages, attorneys' fees, interest and costs.

### THIRD CAUSE OF ACTION
**(Race Discrimination in Violation of New York State Human Rights Law)**

102.    Each of the foregoing allegations is incorporated herein by reference.

103.    At all relevant times, Ms. Diaz-Melo was a member of a protected class because she is Hispanic.

104.    Ms. Diaz-Melo was an "employee" for purposes of § 292 of the New York State Human Rights Law.

105.    Defendant was an "employer" for purposes of § 296 of the New York State Human Rights Law.

106.    LIRR engaged in a pattern and practice of discrimination by utilizing job requirements, and associated waivers granted by HR, to systematically deny interviews and promotions to qualified racial minorities, including Hispanics.

107.    Ms. Diaz-Melo was the most qualified applicant for each of the positions of Branch Line Manager and Assistant Terminal Manager to which she applied.

108.    Ms. Diaz-Melo suffered adverse employment actions, including being denied the foregoing promotions and associated increases in pay.

109.    The adverse employment action Ms. Diaz-Melo suffered arose under circumstances giving rise to an inference of discrimination under New York Executive Law § 296 et seq.

110.    As a result of the discrimination described above, Defendant is liable to Ms. Diaz-Melo for back pay, front pay, lost benefits, mental and emotional harm, interest and costs.

### FOURTH CAUSE OF ACTION
**(Race Discrimination in Violation of New York City Human Rights Law)**

111.    Each of the foregoing allegations is incorporated herein by reference.

112.    At all relevant times, Ms. Diaz-Melo was a member of a protected class because she is Hispanic.

113.    Ms. Diaz-Melo is a "person" under § 8-102(1) of the New York City Human Rights Law.

114.    Defendant is an "employer" under § 8-102(5) of the New York City Human Rights Law.

115.    LIRR engaged in a pattern and practice of discrimination by utilizing job requirements, and associated waivers granted by HR, to systematically deny interviews and promotions to qualified racial minorities, including Hispanics.

116.    Ms. Diaz-Melo was the most qualified applicant for each of the positions of Branch Line Manager and Assistant Terminal Manager to which she applied.

117.    Ms. Diaz-Melo suffered adverse employment actions, the effect of which will primarily be within New York City, including being denied promotions to Assistant Terminal Manager and associated increases in pay.

118.    The adverse employment action Ms. Diaz-Melo suffered arose under circumstances giving rise to an inference of discrimination under N.Y.C. Admin. Code § 8-107 et seq.

119.    Defendant's discriminatory conduct was taken with reckless indifference to Ms. Diaz-Melo's rights.

120.    As a result of the discrimination described above, Defendant is liable to Ms. Diaz-Melo for back pay, front pay, lost benefits, mental and emotional harm, punitive damages, attorneys' fees, interest and costs.

## FIFTH CAUSE OF ACTION
### (Sex Discrimination in Violation of Title VII)

121.    Each of the foregoing allegations is incorporated herein by reference.

122.    At all relevant times, Ms. Diaz-Melo was a member of a protected class because she is a female.

123.    LIRR engaged in a pattern and practice of discrimination by utilizing job requirements, and associated waivers granted by HR, to systematically deny interviews and promotions to qualified females.

124.    Ms. Diaz-Melo was the most qualified applicant for each of the positions of Branch Line Manager and Assistant Terminal Manager to which she applied.

125.    Ms. Diaz-Melo suffered adverse employment actions, including being denied the foregoing promotions and associated increases in pay.

15

126.   The adverse employment action Ms. Diaz-Melo suffered arose under circumstances giving rise to an inference of discrimination under Title VII.

127.   Defendant's conduct in discriminating against Plaintiff was done with malice and with reckless indifference to her rights pursuant to 42 U.S.C. § 1981a.

128.   As a result of the discrimination described above, Defendant is liable to Ms. Diaz-Melo for back pay, front pay, lost benefits, mental and emotional harm, punitive damages, attorneys' fees, interest and costs.

## SIXTH CAUSE OF ACTION
### (Sex Discrimination in Violation of New York State Human Rights Law)

129.   Each of the foregoing allegations is incorporated herein by reference.

130.   At all relevant times, Ms. Diaz-Melo was a member of a protected class because she is a female.

131.   Ms. Diaz-Melo was an "employee" for purposes of § 292 of the New York State Human Rights Law.

132.   Defendant was an "employer" for purposes of § 296 of the New York State Human Rights Law.

133.   LIRR engaged in a pattern and practice of discrimination by utilizing job requirements, and associated waivers granted by HR, to systematically deny interviews and promotions to qualified females.

134.   Ms. Diaz-Melo was the most qualified applicant for each of the positions of Branch Line Manager and Assistant Terminal Manager to which she applied.

135.   Ms. Diaz-Melo suffered adverse employment actions, including being denied the foregoing promotions and associated increases in pay.

136.     The adverse employment action Ms. Diaz-Melo suffered arose under circumstances giving rise to an inference of discrimination under New York Executive Law § 296 et seq.

137.     As a result of the discrimination described above, Defendant is liable to Ms. Diaz-Melo for back pay, front pay, lost benefits, mental and emotional harm, interest and costs.

### SEVENTH CAUSE OF ACTION
**(Sex Discrimination in Violation of New York City Human Rights Law)**

138.     Each of the foregoing allegations is incorporated herein by reference.

139.     At all relevant times, Ms. Diaz-Melo was a member of a protected class because she is a female.

140.     Ms. Diaz-Melo is a "person" under § 8-102(1) of the New York City Human Rights Law.

141.     Defendant is an "employer" under § 8-102(5) of the New York City Human Rights Law.

142.     LIRR engaged in a pattern and practice of discrimination by utilizing job requirements, and associated waivers granted by HR, to systematically deny interviews and promotions to qualified females.

143.     Ms. Diaz-Melo was the most qualified applicant for each of the positions of Branch Line Manager and Assistant Terminal Manager to which she applied.

144.     Ms. Diaz-Melo suffered adverse employment actions, the effect of which will primarily be within New York City, including being denied promotions to Assistant Terminal Manager and associated increases in pay.

145.     The adverse employment action Ms. Diaz-Melo suffered arose under circumstances giving rise to an inference of discrimination under N.Y.C. Admin. Code § 8-107 et seq.

146.    Defendant's discriminatory conduct was taken with reckless indifference to Ms. Diaz-Melo's rights.

147.    As a result of the discrimination described above, Defendant is liable to Ms. Diaz-Melo for back pay, front pay, lost benefits, mental and emotional harm, punitive damages, attorneys' fees, interest and costs.

## EIGHTH CAUSE OF ACTION
### (Age Discrimination in Violation of ADEA)

148.    Each of the foregoing allegations is incorporated herein by reference.

149.    At all relevant times, Plaintiff was an "employee" of Defendant under 29 U.S.C. § 630(f) of the ADEA.

150.    LIRR was Plaintiff's "employer" subject to the provisions of the ADEA under 29 U.S.C. § 630(b).

151.    LIRR engaged in a pattern and practice of discrimination by utilizing job requirements, and associated waivers granted by HR, to systematically deny interviews and promotions to qualified employees in their late 40's and older.

152.    Ms. Diaz-Melo was the most qualified applicant for each of the positions of Branch Line Manager and Assistant Terminal Manager to which she applied.

153.    Ms. Diaz-Melo suffered adverse employment actions, including being denied the foregoing promotions and associated increases in pay.  These adverse employment actions, as set forth in greater detail above, were based on Ms. Diaz-Melo's age in violation of the ADEA.

154.    Plaintiff has suffered emotional distress damages as a result of LIRR's actions.

155.    LIRR's conduct in discriminating against Plaintiff on the basis of her age was willful, entitling Plaintiff to an additional sum of liquidated damages pursuant to 29 U.S.C. § 626(b).

156.    As a result of the discrimination detailed in the foregoing paragraphs, Plaintiff suffered a substantial loss of earnings and benefits and will continue to suffer such losses in the future.

157.    Accordingly, LIRR is liable to Plaintiff for back pay and benefits, front pay and benefits, compensatory damages, liquidated damages, attorneys' fees, prejudgment and post-judgment interest and costs.

## NINTH CAUSE OF ACTION
### (Age Discrimination in Violation of New York State Human Rights Law)

158.    Each of the foregoing allegations is incorporated herein by reference.

159.    At all relevant times, Ms. Diaz-Melo was a member of a protected class because she is over the age of 40.

160.    Ms. Diaz-Melo was an "employee" for purposes of § 292 of the New York State Human Rights Law.

161.    Defendant was an "employer" for purposes of § 296 of the New York State Human Rights Law.

162.    LIRR engaged in a pattern and practice of discrimination by utilizing job requirements, and associated waivers granted by HR, to systematically deny interviews and promotions to qualified employees in their late 40's and older.

163.    Ms. Diaz-Melo was the most qualified applicant for each of the positions of Branch Line Manager and Assistant Terminal Manager to which she applied.

164.    Ms. Diaz-Melo suffered adverse employment actions, including being denied the foregoing promotions and associated increases in pay.

165.    The adverse employment action Ms. Diaz-Melo suffered arose under circumstances giving rise to an inference of discrimination under New York Executive Law § 296 et seq.

166.    As a result of the discrimination described above, Defendant is liable to Ms. Diaz-Melo for back pay, front pay, lost benefits, mental and emotional harm, interest and costs.

**TENTH CAUSE OF ACTION**
**(Age Discrimination in Violation of New York City Human Rights Law)**

167.    Each of the foregoing allegations is incorporated herein by reference.

168.    At all relevant times, Ms. Diaz-Melo was a member of a protected class because she is over the age of 40.

169.    Ms. Diaz-Melo is a "person" under § 8-102(1) of the New York City Human Rights Law.

170.    Defendant is an "employer" under § 8-102(5) of the New York City Human Rights Law.

171.    LIRR engaged in a pattern and practice of discrimination by utilizing job requirements, and associated waivers granted by HR, to systematically deny interviews and promotions to qualified employees in their late 40's and older.

172.    Ms. Diaz-Melo was the most qualified applicant for each of the positions of Branch Line Manager and Assistant Terminal Manager to which she applied.

173.    Ms. Diaz-Melo suffered adverse employment actions, the effect of which will primarily be within New York City, including being denied promotions to Assistant Terminal Manager and associated increases in pay.

174.    The adverse employment action Ms. Diaz-Melo suffered arose under circumstances giving rise to an inference of discrimination under N.Y.C. Admin. Code § 8-107 et seq.

175.    Defendant's discriminatory conduct was taken with reckless indifference to Ms. Diaz-Melo's rights.

176.     As a result of the discrimination described above, Defendant is liable to Ms. Diaz-Melo for back pay, front pay, lost benefits, mental and emotional harm, punitive damages, attorneys' fees, interest and costs.

## ELEVENTH CAUSE OF ACTION
**(Mixed Motive Discrimination in Violation of New York City Human Rights Law)**

177.     Each of the foregoing allegations is incorporated herein by reference.

178.     At all relevant times, Ms. Diaz-Melo was a member of several protected classes because she Hispanic, female and over the age of 40.

179.     Ms. Diaz-Melo is a "person" under § 8-102(1) of the New York City Human Rights Law.

180.     Defendant is an "employer" under § 8-102(5) of the New York City Human Rights Law.

181.     Ms. Diaz-Melo was the most qualified applicant for each of the positions of Branch Line Manager and Assistant Terminal Manager to which she applied.

182.     Ms. Diaz-Melo suffered adverse employment actions, the effect of which will primarily be within New York City, including being denied promotions to Assistant Terminal Manager and associated increases in pay.

183.     The adverse employment action Ms. Diaz-Melo suffered arose under circumstances giving rise to an inference of discrimination under N.Y.C. Admin. Code § 8-107 et seq. based upon a mixed motive arising from Ms. Diaz-Melo being Hispanic, female and/or over the age of 40.

184.     Defendant's discriminatory conduct was taken with reckless indifference to Ms. Diaz-Melo's rights.

185.    As a result of the discrimination described above, Defendant is liable to Ms. Diaz-Melo for back pay, front pay, lost benefits, mental and emotional harm, punitive damages, attorneys' fees, interest and costs.

WHEREFORE, while reserving the right to seek additional damages as available, Plaintiff demands judgment against Defendants as follows:

A.    An award of Plaintiff's actual damages in an amount to be determined at trial for loss of compensation, benefits, and professional opportunities, including an award of back pay plus benefits and front pay plus benefits;

B.    An award of damages in an amount to be determined at trial to compensate Plaintiff for her severe mental anguish and emotional distress, humiliation, embarrassment, and emotional injury;

C.    An award of punitive damages;

D.    An award of liquidated damages;

E.    An award of reasonable attorneys' fees and costs of this action;

F.    An order directing Defendants to cease and desist from their discriminatory practices and directing any other applicable injunctive relief; and

G.    Such other and further relief as this Court may deem just and proper.

Dated: New York, New York
       December 13, 2016

LIDDLE & ROBINSON, L.L.P.

By: _____
    Jeffrey L. Liddle
800 Third Avenue, 8th Floor

22

New York, New York 10022
Telephone:  (212) 687-8500
Email:  jliddle@liddlerobinson.com

*Attorneys for Plaintiff*